ATTORNEYS FOR APPELLANT
Heather L. Wilson
Amy S. Wilson
Margaret L. Smith
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA CHAMBER OF COMMERCE, INC.
Jon B. Laramore
Fenton D. Strickland
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA LEGAL FOUNDATION
Bryan H. Babb
Marisol Sanchez
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

David L. Steiner
Deputy Attorney General

Ronnie L. Miller
Lauren D. Bogan
Indiana Department of Workforce Development
Indianapolis, Indiana

**FILED**
Sep 29 2011, 3:29 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 93S02-1102-EX-89

FRANKLIN ELECTRIC COMPANY, INC.,

*Appellant (Plaintiff below),*

v.

UNEMPLOYMENT INSURANCE APPEALS OF
THE INDIANA DEPARTMENT OF WORKFORCE
DEVELOPMENT,

*Appellee (Defendant below).*

Appeal from the Indiana Department of Workforce Development, No. 08-37203
The Honorable Robert K. Robisch, Liability Administrative Law Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 93A02-0911-EX-01121

**September 29, 2011**

**Shepard, Chief Justice.**

Franklin Electric formed two new subsidiaries and started new unemployment experience accounts with a low introductory contribution rate for each one. We hold that the new subsidiaries are not new employers and that Franklin Electric's experience rate should have applied to contributions made by the subsidiaries.

**Facts and Procedural History**

Franklin Electric Co., Inc. is an Indiana corporation that manufactures pumps. In 2002, Franklin Electric hired a new CEO who decided to expand the company's product line and reorganized the business to do so. To that end, Franklin Electric formed two new wholly owned subsidiary corporations, Franklin Electric Manufacturing, Inc. and Franklin Electric Sales, Inc. Franklin Electric Manufacturing took over all manufacturing operations and Franklin Electric Sales began selling the goods made by Franklin Electric Manufacturing.

Franklin Electric transferred real estate, equipment, and other assets related to its manufacturing operations to Franklin Electric Manufacturing in exchange for one hundred percent ownership of the new corporation. Franklin Electric also transferred approximately 470 employees to Franklin Electric Manufacturing. Franklin Electric transferred all its sales-related personal property, sales contracts, and other related items to Franklin Electric Sales in exchange for one hundred percent ownership of the new corporation. Franklin Electric also transferred about ten employees to Franklin Electric Sales. Franklin Electric retained some 170 employees. Franklin Electric also retained some assets including all its intellectual property. It continued to serve as corporate headquarters for the two new subsidiaries.

Franklin Electric engaged an accounting firm to advise it on tax issues related to the formation of the subsidiaries. The accounting firm believed that the two new subsidiaries would be eligible for a new unemployment insurance experience account with the new employer rate of 2.7%. Prior to the transfer, Franklin Electric had an experience rating approaching 5%.

2

Franklin Electric filed a "Report to Determine Status" for both Franklin Electric Sales and Franklin Electric Manufacturing. (Division's Ex. 2, 3.) The Department of Workforce Development responded by acknowledging that Franklin Electric had disposed of a "distinct and segregable portion of its Indiana business," and informing Franklin Electric that it had the option to transfer part of its experience balance to the new entities or start with the new rate. (Employer's Ex. 2.)

In 2006, Franklin Electric sold a portion of the manufacturing operation previously contributed to Franklin Electric Manufacturing to another company, Bluffton Motor Works LLC. Franklin Electric Manufacturing was not a direct party to the sales contract between Franklin Electric and Bluffton Motorworks and the assets were not transferred back to Franklin Electric before the sale.

In 2006, the Department received new software that allowed it to monitor wage records more closely. The Department noted a transfer of a large number of wage records from Franklin Electric to Franklin Electric Sales and Franklin Electric Manufacturing. The Department next noticed a transfer of wage records from Franklin Electric Manufacturing to Bluffton Motor Works. These transfers prompted the Department to begin an investigation into Franklin Electric Sales' and Franklin Electric Manufacturing's status.

On November 18, 2008, the Department notified Franklin Electric that it had conducted an investigation and determined that Franklin Electric "did not dispose of a distinct and segregable portion of its organization, trade, or business." (Division's Ex. A.) The Department canceled Franklin Electric Manufacturing's and Franklin Electric Sales's experience accounts. All experience balances and liabilities reverted to Franklin Electric, and the Department recalculated Franklin Electric's merit rate for 2005, 2006, 2007, and 2008. The Department demanded back payments, interest, and a ten percent penalty.

Franklin Electric appealed the Department's determination to a liability administrative law judge (LALJ) who affirmed the Department's determination that the three entities are a

single employer, but waived the penalties imposed by the Department. The Court of Appeals affirmed the LALJ. Franklin Elec. Co. v. Unemployment Ins. Appeals of the Dep't of Workforce Dev., 928 N.E.2d 880 (Ind. Ct. App. 2010). We granted transfer, vacating the opinion of the Court of Appeals. 950 N.E.2d 1199 (Ind. 2011) (table). We affirm the determination of the LALJ.

## Standard of Review

Under Indiana Code § 22-4-32-9 (2007), "Any decision of the liability administrative law judge shall be conclusive and binding as to all questions of fact." The decision of the LALJ may be appealed "solely for errors of law under the same terms and conditions as govern appeals in ordinary civil court." Id. The LALJ's legal conclusions are not entitled to the same deference. Ind. Dep't of Envtl Mgmt. v. West, 838 N.E.2d 408 (Ind. 2005).

## The Subsidiaries Are Not New Employers.

Franklin Electric raises three issues on appeal, which we restate as whether Franklin Electric Manufacturing and Franklin Electric Sales acquired the "distinct and segregable portion" of Franklin Electric's business required to make them "employers." We hold that Franklin Electric Manufacturing and Franklin Electric Sales did not acquire a distinct and segregable portion of Franklin Electric's business and thus did not qualify as "employers" under the laws governing Indiana's unemployment compensation arrangements.

Unemployment insurance in Indiana is financed by a tax on Indiana employers. Employer contributions are charged proportionally against an employer's experience account. Ind. Code § 22-4-11-1(a) (2007 & Supp. 2010). As a result, the more unemployment claims that are filed against an employer, the more that employer must contribute to the unemployment fund.

4

Indianapolis Concrete, Inc. v. Unemployment Ins. Appeals of the Ind. Dep't of Workforce Dev., 900 N.E.2d 48 (Ind. Ct. App. 2009).


Franklin Electric argues that its two new subsidiaries are successor employers entitled to a 2.7% experience rate under Indiana Code § 22-4-10-6(c) (2007), which says, "If not an employer prior to the acquisition, the successor employer shall pay the rate of two and seven-tenths percent (2.7%) unless the successor employer assumes all or part of the resources and liabilities of the predecessor employer's experience account." To qualify for an experience account or be a "successor employer," an entity must be an "employer" as defined in the Code. See Ind. Code § 22-4-10-4 (2007). Thus, whether Franklin Electric Sales and Franklin Electric Manufacturing became employers is a threshold question that must be addressed before we can decide whether they are successor employers.


Franklin Electric maintains that its two new subsidiaries became employers when Franklin Electric transferred assets and employees to them. Because Franklin Electric claims its subsidiaries became employers through a partial acquisition, the relevant definition of "employer" is found in Indiana Code § 22-4-7-2(b) (2007), which states:

> Any employing unit (whether or not an employing unit at the time of acquisition) which acquires a distinct and segregable portion of the organization, trade, or business within this state of another employing unit which at the time of such acquisition is an employer subject to this article only if the employment experience of the disposing employing unit combined with the employment of its predecessor or predecessors would have qualified such employing unit under section 1 of this chapter if the portion acquired had constituted its entire organization, trade, or business and the acquisition results in the operation or continuance of an organization, trade, or business.

For Franklin Electric Sales and Franklin Electric Manufacturing to qualify for their own experience accounts, the two subsidiaries must first show that they are employers, which requires proving that they acquired a "distinct and segregable" portion of Franklin Electric's business. This case turns entirely on the application of this statutory standard.

5

The Court of Appeals addressed the meaning of "distinct and segregable"[1] in Ashlin Transportation Services, Inc. v. Indiana Unemployment Insurance Board, 637 N.E.2d 162 (Ind. Ct. App. 1994). That court examined the plain, ordinary meaning of the words and concluded:

> The terms "distinct" and "segregable[]" . . . are synonymous. The word "distinct" is defined as "different, separate, plain, well-defined, or clearly perceived." Likewise, the root of "segregable," segregate, is defined as "separate, isolate, or set apart." Thus, "segregable" means something that is capable of being separated, isolated, or set apart.

Id. at 167 (quoting Black's Law Dictionary 425, 1218 (4th ed. rev. 1968); Webster's New World Dictionary 409, 1290 (2d ed. 1982)). We agree. Thus, the question is whether Franklin Electric Sales and Franklin Electric Manufacturing acquired a business that was separate from Franklin Electric.

In this case, we cannot say that Franklin Electric Sales and Franklin Electric Manufacturing are separate from Franklin Electric. Franklin Electric Sales and Franklin Electric Manufacturing combined conduct essentially the same business (using the same employees) that Franklin Electric did before the change. We acknowledge that with the subsidiaries in place, the company did make changes to its product line and completely revamped its marketing and sales practices. These changes were simply the natural evolution of Franklin Electric's business model. After creating the subsidiaries, Franklin Electric's business was still manufacturing and selling pumps.

Although each of the three corporations maintained their own payroll, had their own employer identification numbers, and issued their own W-2s, Franklin Electric still writes a

---

[1] In Ashlin, the Court of Appeals was defining "distinct and segregable" under Indiana Code § 22-4-10-6(b). The term "distinct and segregable" appears repeatedly in the Unemployment Compensation Act.

6

single check to its payroll company to pay the wages to employees of all three companies. Employee benefits including health insurance and retirement benefits for all three entities are also paid by Franklin Electric, and Franklin Electric provides workers' compensation coverage for all three entities. With the funds to pay wages for all three entities coming from only one of them, it is difficult to find that Franklin Electric Sales and Franklin Electric Manufacturing were distinct entities separate from one another.

Finally, Franklin Electric sold assets to Bluffton Motor Works that it had previously transferred to Franklin Electric Manufacturing. This sale was accomplished without first transferring those assets back to Franklin Electric. This fact most strongly suggests that Franklin Electric Manufacturing was not separate from Franklin Electric.

None of these facts alone would be dispositive, but taken together they adequately support the LALJ's conclusion that Franklin Electric Sales and Franklin Electric Manufacturing are not distinct and segregable from Franklin Electric.

This result is necessary given the way the experience-rating system works. Each employer contributes to the fund based on the number of claims submitted against the employer. Thus, each employer essentially pays its own fair share. Franklin Electric had a rate of 4.9%. (Appellee's Br. at 4.) With the subsidiaries in place, that rate fell to 2.7% for the employees it transferred to the subsidiaries. The rate was lowered despite the fact that the same employees were doing essentially the same work and were being paid by the same parent company as before the change. As a result, other contributors to the fund would be stuck making up the extra 2.2%. Because the same employees are doing the same work for the same people, we hold that the business acquired by Franklin Electric Sales and Franklin Electric Manufacturing was not distinct and segregable from Franklin Electric.

Today's holding is a narrow one. It deals only with the language "distinct and segregable" as used in the unemployment statutes and only concerns determining the proper merit rate for unemployment contribution. The instant ruling neither calls into question the

7

validity of the wholly owned subsidiary arrangement, nor holds that the creation of a wholly owned subsidiary can never result in the new entity becoming a separate employer.[2]

The Unemployment Compensation Act allows a ten percent penalty added to delinquent unemployment contributions if the lateness is caused by "negligence or intentional disregard of authorized rules, regulations, or notices" of the Department. Ind. Code § 22-4-29-1(b) (2007). The Department demanded the ten percent penalty from Franklin Electric. The LALJ waived the penalty, finding that there was no fraud or negligence. We agree. There is no evidence in the record suggesting any improper conduct on the part of Franklin Electric. Franklin Electric reorganized the company for reasons completely separate from the unemployment tax. It was not aware of any potential unemployment tax implications until it received an opinion from its accounting firm. It filed its Reports to Determine Status in good faith based on that advice. The penalty, therefore, is not appropriate. We also affirm the LALJ's decision to set the beginning date of the recalculation of Franklin Electric's merit rate as November 26, 2004, in compliance with the four-year reassessment limit in Indiana Code § 22-4-29-2 (2007 & Supp. 2010).

**Conclusion**

The decision of the Liability Administrative Law Judge is affirmed.

Dickson, Sullivan, Rucker, and David, JJ., concur.

---

[2] We do note that the Unemployment Compensation Act was amended in 2006 (after the relevant events in this case) to require that a successor employer take a predecessor's experience account balance if the two employers "have substantially common ownership, management, or control." Ind. Code § 22-4-11.5-7(a) (2007).