**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 17 2012, 9:03 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DUSTIN STOHLER**
Law Office of Dustin Stohler
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHY BRADLEY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAYROLL DISBURSEMENT ACCOUNT 2, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1108-EX-878 |
| | ) | |
| UNEMPLOYMENT INSURANCE APPEALS OF THE INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT
The Honorable Joanne T. Green, Liability Administrative Law Judge
Case No. 11-02516

**July 17, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Payroll Disbursement Account 2, Inc. ("PDA 2"), appeals the decision of the Liability Administrative Law Judge ("LALJ") affirming the determination of the Indiana Department of Workforce Development ("Department") that PDA 2 is a partial successor employer of Management 2000 Benefits, Inc. ("Management 2000"), for purposes of calculating its unemployment insurance tax contributions. We affirm.

## ISSUE

PDA 2 presents one issue, which we restate as whether the LALJ erred by determining that PDA 2 is a partial successor employer pursuant to Indiana Code section 22-4-10-6 (2006).

## FACTS AND PROCEDURAL HISTORY

A professional employer organization ("PEO") provides human resource services to its clients. By statute, the employees of clients of a PEO are also considered employees of the PEO, and the PEO is required to pay the unemployment insurance tax contributions for those employees. *See* Ind. Code § 27-16-10-1 (2005).

Management 2000 was a PEO that went out of business in January 2010. Stephen Day, the brother of Management 2000's owner, had marketed insurance products through the business and decided, together with his stepson Scott Thomas, to take over its clients.

Day and Thomas formed Payroll Disbursement Account, Inc. ("PDA 1"), and PDA 2, and clients would sign with one of the businesses. Clients signing agreements with PDA 1 would receive only payroll services. The employees of clients of PDA 1 were not considered employees of PDA 1, and the clients were responsible for paying the

2

unemployment tax contributions. In contrast, the agreement between clients and PDA 2 required PDA 2 to treat the clients' employees as its own and to pay the unemployment tax contributions.

PDA 2 registered as a PEO with the Indiana Department of Insurance. When PDA 2 registered with the Department in March 2010, it indicated that it was not a PEO and that it was not registering as the result of a merger or acquisition.

The Department began to investigate PDA 1 and PDA 2 when it received several unemployment contribution reports that appeared to be altered, along with accompanying checks and wage reports, on behalf of businesses that had some sort of relationship with PDA 1 or PDA 2. For example, the Department could tell that the employer account number on Value Market's unemployment contribution report had been whited out and that Value Market's federal employer identification number had been written in. The portion of the report showing the employer's name and address listed Value Market as the employer, in the care of PDA 1, but with PDA 2's address. Further investigation showed that PDA 2's address had also been the address of Management 2000.

The drawer of the accompanying check was listed as PDA 1, but the address was that of PDA 2. When the Department called the payor bank to verify the account, the bank indicated that the account was owned by PDA 2.

The wage report from Value Market showed well over fifty employees, but when the Department called Value Market's office manager, she said they had only twelve employees. Value Market's owner told the Department that the business reported its wages through the PEO Management 2000 and had done so for years. He said there had

been no recent changes in the business's relationship with Management 2000, other than that Management 2000 "might've changed their name again." Tr. p. 13. This information was inconsistent with Value Market's Report to Determine Status, filed with the Department, which stated that it would not be reporting wages through a PEO.

The Department's investigation revealed that PDA 2 answered phone calls as Management 2000. The Department ran a query to identify all records with identical social security numbers between Management 2000's wage report for the fourth quarter of 2009 and PDA 2's wage report for the first quarter of 2010. Nearly 300 of the employees reported by Management 2000 were reported under a variety of businesses in PDA 2's first wage report with quarterly payments made through PDA 1. It appeared to the Department that PDA 2 was setting up Management 2000's clients as new businesses, rather than reporting the acquisition of those clients, in order to have a more favorable contribution rate for unemployment insurance purposes.

Based on the information it had gathered, the Department determined that PDA 2 acquired Management 2000's clients. And because neither PDA 2 nor Management 2000 had provided the Department with any information regarding the acquisition as required, it determined that PDA 2 acquired fifty percent of the business from Management 2000.

In October 2010, the Department sent PDA 2 a Notice of Partial Disposition of Business to Acquirer informing PDA 2 of the Department's determination of its status as a partial successor employer to Management 2000. PDA 2 filed a timely protest, and a liability hearing was held before the LALJ in June 2011. At the time of the hearing, PDA

4

2's liability to the Department, including interest and penalties, exceeded two million dollars.

At the hearing, the Department submitted over a hundred pages of unemployment contribution reports, wage reports, and checks sent in on behalf of clients it had identified as being clients of PDA 2. It also submitted Reports to Determine Status filed on behalf of many of those clients in which they stated that they would not be reporting wages through a PEO. One admitted record showed that the Department called the bank regarding payments identified as being from PDA 1 but showing PDA 2's address and was informed that the liabilities were being paid out of an account owned by PDA 2.

PDA 2 submitted an agreement between PDA 2 and a specific client providing that PDA 2 was a co-employer of the client's employees and holding PDA 2 responsible for unemployment contributions. It also submitted an agreement for payroll services between PDA 1 and a different client providing that PDA 1 was not a co-employer. Other than these two agreements, PDA 2 did not submit any agreements showing which clients were PDA 1's clients and which were PDA 2's clients. When asked, Day could not identify if clients were those of PDA 1 or PDA 2. He did state that Value Market was a client of PDA 1. Day testified that PDA 2 had never acquired any former clients of Management 2000.

The LALJ entered findings and conclusions and determined that PDA 2 is a partial successor employer of Management 2000. Among its conclusions, the LALJ stated:

> 2.     . . . By registering with the Indiana Department of Insurance as a PEO, DWD was required to treat PDA2 as an employer. As a result, the employees of the clients were the employees of PDA2 and the employer

5

had a requirement to report their wages and submit contributions to unemployment insurance for the employees. PDA2 became the employer rather than the individual clients.

3. . . . Management 2000 ceased business in Indiana. PDA2 took over clients of Management 2000 and continued to provide the same services to the clients as had been performed by Management 2000. This was a continuance of Management 2000's business.

4. . . . The Liability Administrative Law Judge finds that a partial successorship occurred between the employer and Management 2000. The employer failed to file an application for its portion of the disposing employer's experience. Instead, the employer registered as a new employer with DWD indicating there was no acquisition and that the employer was not a PEO. In fact, the employer had also registered with the Department of Insurance as a PEO.

5. . . . The disposer failed to file the proper paperwork resulting in DWD's conclusion that the acquisition was a flat 50% of Management 2000 and of its experience account.

\* \* \* \* \*

Based on the above, DWD correctly concluded that the employer was a successor employer of Management 2000. By statute, DWD was required to consider the employer as the employer of the employees of its clients when the employer registered as a PEO in Indiana. There is no provision for the employer to have some of its clients as clients of a PEO, causing PDA2 to have employer status, while other clients would receive services of a payroll company, with PDA2 treated as a non-employer. Once the employer registered as a P[EO], the employer had no option to be treated as other than a PEO by DWD.

Ex. pp. 33-35. The LALJ thus denied PDA 2's protest. PDA 2 now appeals.

DISCUSSION AND DECISION

PDA 2 contends that the LALJ erred by determining that PDA 2 is a partial successor employer of Management 2000.

6

"Any decision of the liability administrative law judge shall be conclusive and binding as to all questions of fact." Ind. Code § 22-4-32-9(a) (1995); *Franklin Elec. Co. v. Unemployment Ins. Appeals of the Ind. Dep't of Workforce Dev.*, 953 N.E.2d 1066, 1069 (Ind. 2011). When the decision is challenged as contrary to law, we are limited to a two-part inquiry into the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts. *Indianapolis Concrete, Inc. v. Unemployment Ins. Appeals of the Ind. Dep't of Workforce Dev.*, 900 N.E.2d 48, 49-50 (Ind. Ct. App. 2009). Under this standard, basic facts are reviewed for substantial evidence, conclusions of law are reviewed for their correctness, and ultimate facts are reviewed to determine whether the LALJ's finding is a reasonable one. *Id.* at 50. Ultimate facts are conclusions or inferences from the basic facts. *Id.* When reviewing an administrative agency's decision, we view the record in the light most favorable to the administrative proceedings and are prohibited from reweighing the evidence or judging the credibility of witnesses. *Jug's Catering, Inc. v. Ind. Dep't of Workforce Dev., Unemployment Ins. Bd.*, 714 N.E.2d 207, 209 (Ind. Ct. App. 1999), *trans. denied*.

Unemployment insurance benefits are funded by a tax contribution imposed upon Indiana employers. *Indianapolis Concrete, Inc.*, 900 N.E.2d at 50. Each year, the Department determines the contribution rate applicable to each employer, and the contribution is then credited to an "experience account" established for each employer by the Department. *Id.* An employer's experience account is charged when a qualifying employee receives unemployment benefits based upon employment with that employer. *Id.* The experience account contribution rate for an employer is determined in part by the

7

balance in its experience account. *Id.* As a result, the more unemployment claims that are filed against an employer, the more that employer must contribute to the unemployment fund. *Franklin Elec. Co.*, 953 N.E.2d at 1069.

For purposes of unemployment compensation laws, a covered employee of a PEO is an employee of the PEO. Ind. Code § 27-16-10-1(a). A PEO is responsible for the payment of contributions, penalties, and interest on wages paid by the PEO to the PEO's covered employees during the term of the professional employer agreement. Ind. Code § 27-16-10-1(b). The PEO must report and pay all required contributions using its own state employer account number and contribution rate. Ind. Code § 27-16-10-2 (2005).

A partial successor employer includes an employer that acquires a distinct and segregable portion of the organization, trade, or business within this state of another employer. *See* Ind. Code § 22-4-10-6(b)(2). A partial successor employer "shall assume the position of the predecessor employer with respect to the portion of the resources and liabilities of the predecessor's experience account as pertains to the distinct and segregable portion of the predecessor's organization, trade, or business acquired by the successor." Ind. Code § 22-4-10-6(b).

PDA 2 argues that it is not a partial successor employer to Management 2000. Specifically, it asserts that the LALJ improperly treated PDA 1 and PDA 2 as a single entity and improperly found PDA 2 to be a partial successor employer merely because the evidence shows that PDA 1 provides payroll services to former clients of Management 2000. The Department responds that the LALJ did not treat PDA 1 and PDA 2 as a

8

single entity and that the LALJ's determination was correct because the evidence shows that PDA 2 acquired Management 2000's clients.

PDA 2's claim that PDA 1 and not PDA 2 provided services to Management 2000's former clients hinges on the fact that the unemployment contribution reports and accompanying checks submitted into evidence identify that they are from PDA 1. However, while all of the altered reports and checks show the name of PDA 1, some of those reports and checks show PDA 2's address, which had also been Management 2000's address. The other reports show a Colorado address with accompanying checks showing PDA 2's address. The payments purportedly made by PDA 1 on behalf of the businesses were made out of PDA 2's bank account. Moreover, a query run by the Department showed a movement of nearly 300 employees from Management 2000's last quarter to PDA 2's first quarter. Further, PDA 2 was answering phones as Management 2000, and the client Value Market said that it reported wages through PEO Management 2000 and had done so for years and that nothing had changed in their business relationship.

When given the name of businesses, Day could not identify which were clients of PDA 1 and which were those of PDA 2. He did note that Value Market was a client of PDA 1. However, this contradicted testimony provided by the Department that Value Market's owner claimed to report wages through the PEO Management 2000 and had done so for years. PDA 2 submitted one PDA 1 agreement with a client and one PDA 2 agreement with a different client; however, it submitted no other agreements showing which clients were with PDA 1 and which were with PDA 2.

9

From this evidence, it was reasonable for the LALJ to conclude that PDA 2 had acquired Management 2000's clients and thus a distinct and segregable portion of Management 2000. *See Ashlin Transp. Servs., Inc. v. Ind. Unemployment Ins. Bd.*, 637 N.E.2d 162, 172 (Ind. Ct. App. 1994) (holding that Ashlin's acquisition of truck drivers from two trucking companies constituted an acquisition of a distinct and segregable portion of those companies).

PDA 2 nonetheless argues that the LALJ treated PDA 1 and PDA 2 as a single entity. It points to the LALJ's decision stating, "There is no provision for the employer to have some of its clients as clients of a PEO, causing PDA2 to have employer status, while other clients would receive services of a payroll company, with PDA2 treated as a non-employer." Ex. p. 35. We disagree with PDA 2 that the LALJ treated PDA 1 and PDA 2 as a single entity.[1] Instead, the statement merely reflects conflicting testimony during the hearing as to whether a PEO may provide payroll services only to some businesses and thus not be responsible for unemployment insurance tax contributions in those cases. This question is not before us. Instead, the LALJ determined that PDA 2 acquired Management 2000's clients and continued to provide the same services to them. *See* Ex. p. 33 ("PDA2 took over clients of Management 2000 and continued to provide the same services to the clients as had been performed by Management 2000. This was a continuance of Management 2000's business.").

---

[1] For this reason, it is unnecessary to address PDA 2's claim that the LALJ's decision improperly pierces the corporate veil.

We conclude that the LALJ's determination that PDA 2 is a partial successor employer to Management 2000 is reasonable. PDA 2 does not challenge the amount of Management 2000's experience account transferred to PDA 2.

CONCLUSION

For the reasons stated, we affirm the decision of the LALJ.

Affirmed.

BAKER, J., and DARDEN, J., concur.

11