# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**DAVID A. GIVEN**
**FENTON D. STRICKLAND**
Faegre Baker Daniels LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana



FILED

Oct 30 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

BOULDER ACQUISITION CORP. (n/k/a )
AFFILIATED COMPUTER SERVICES, LLC), )
*et al*., )
                                 )
       Appellants, )
                                 )
       vs. )     No. 93A02-1202-EX-127
                                 )
UNEMPLOYMENT INSURANCE APPEALS )
OF THE INDIANA DEPARTMENT OF )
WORKFORCE DEVELOPMENT, )
                                 )
       Appellee. )

APPEAL FROM THE REVIEW BOARD OF THE DEPARTMENT OF
WORKFORCE DEVELOPMENT UNEMPLOYMENT INSURANCE APPEALS
Cause No. 10-33336

**October 30, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

Boulder Acquisition Corporation ("BAC"), a subsidiary of Xerox Corporation, merged with Affiliated Computer Services, Inc. ("ACS"). In doing so, BAC acquired equity interests in various subsidiaries of ACS, several of which operate in Indiana (the "Subsidiaries"). In addition to combining the unemployment insurance experience accounts of BAC and ACS, the Indiana Department of Workforce Development (the "Department") also combined the experience accounts of BAC and the Subsidiaries. BAC and the Subsidiaries raise the sole issue of whether the Department erred in combining the experience accounts of BAC and the Subsidiaries after the merger. Concluding the Department did so err, we reverse and remand.

Facts and Procedural History

In order to facilitate a merger with ACS, Xerox Corporation incorporated BAC, a directly owned subsidiary of Xerox.[1] Prior to the merger, ACS was the parent corporation for over seventy subsidiaries, twenty-six of which operated in Indiana. In the course of the merger, these entities became subsidiaries of BAC.

Prior to the merger, the Subsidiaries, which each had its own employees, all had their own unemployment insurance accounts with the Department that were separate from ACS's unemployment insurance account. Unemployment insurance experience accounts operate as follows:

---

[1] As BAC stated in a letter to the Department, "[s]hortly thereafter, BAC as successor will effect . . . a name change from BAC to Affiliated Computer Services, Inc. and thereafter, will conduct its business under the name Affiliated Computer Services, Inc." Appendix to Brief of Appellants at 105-06. For simplicity's

Under the Indiana Employment and Training Services Act, unemployment insurance benefits are funded by a tax contribution imposed upon Indiana employers. Each year, the Department determines the contribution rate applicable to each employer, and the contribution is then credited to an "experience account" established for each employer by the Department. An employer's experience account is charged when a qualifying employee receives unemployment benefits based upon employment with that employer. The experience account contribution rate for an employer is determined, in part, by the balance in its experience account. Therefore, when a company's employees file more unemployment claims, its contribution rate will also increase.

Indianapolis Concrete, Inc. v. Unemployment Ins. Appeals of Ind. Dep't of Workforce Dev., 900 N.E.2d 48, 50 (Ind. Ct. App. 2009) (citations omitted).

After the merger, BAC maintained the same relationship with the Subsidiaries as ACS had previously maintained. That is, each subsidiary is an individual legal entity. Most were incorporated, while some were formed as limited liability companies and one was formed as a limited partnership. As such, they each have their own governance, board of directors or managers, and elected officers. They each have their own assets and liabilities. They are each taxed separately for other federal and state tax purposes, and they each maintain separate financial reporting.

After BAC reported the merger to the Department, the Department determined BAC became the "successor employer" of the Subsidiaries pursuant to Indiana Code 22-4-9-3, and it consequently combined the experience accounts of all the Subsidiaries with BAC. The result of the combination of their experience accounts is that their combined account contribution rate was 3.7%, which equated to a higher combined unemployment insurance

sake, we will refer to the legal entity that was formed in the merger as BAC, despite the fact that its name was

3

tax for BAC and the Subsidiaries. Additionally, the Department assessed a penalty to BAC

for failure to timely pay the appropriate unemployment insurance fees.

BAC and the Subsidiaries sent three protest letters to the Department, each time

claiming the Subsidiaries were separate and distinct from ACS and were unaffected by the

merger, and that they should have kept their individual experience accounts with the

Department. BAC also protested the Department's assessment of penalties. After a hearing,

the Department's liability administrative law judge ("LALJ") upheld the Department's

determination that BAC was the successor employer to the Subsidiaries and denied their

protests. The LALJ's findings of fact include:

> On February 1, 2010, the Secretary of BAC sent a letter to the Department explaining the transaction and including a Report to Determine Status . . . . In the letter, the BAC Secretary indicated BAC had assumed all or any part of an existing Indiana business from another business entity and that there was a purchase or merger consolidation of a complete organization. The letter indicated Ernst & Young was assisting with the unemployment tax registrations and transfers. The letter directed the agency to contact Ernst & Young LLP with "information regarding the establishment of our accounts and direct all questions regarding the registrations" to Ernst & Young.
> In 2010, the Department assigned Tracey Moon to investigate and to determine BAC's status for the Department. Ms. Moon attempted to contact BAC but was unable to reach anyone. She contacted Robin Davidson with Ernst and Young, who indicated the acquisition by BAC included acquisition of the subsidiaries from ACS. Ms. Moon reviewed press releases from Xerox regarding its acquisition of ACS. . . . On February 10, 2010, the Department voided the predecessor accounts of ACS and its subsidiaries. In separate Notice of Complete Disposition of Business to Acquirer, the Department sent to BAC on June 1, 2010, 26 Notices that BAC was the successor employer and that BAC assumed the experience account of each individual subsidiary. The Notice regarding the disposer Outsourced Administrative Systems showed a contribution rate for 2010 of 3.7%. . . .

---

thereafter changed to Affiliated Computer Services, Inc.

The statute required a successor simultaneously acquiring the experience account of two or more employers to pay the highest rate applicable to the experience accounts. (IC 22-4-10-6) This would give BAC a contribution rate of 5.6. The Department decided to apply IC 22-4-11-7 instead to be fair to BAC, and to allow a recalculation and a blended rate of 3.7. For 2011, the employer's rate would be 4.068. Prior to the merger, ACS and the subsidiaries had separate employer accounts for purposes of unemployment contributions. . . .

Prior to the merger, ADP handled payroll and W2s for each subsidiary. The corporate address in Dallas, Texas appeared on all pay information. Payroll procedures were the same following the merger. . . .

Appendix to Brief of Appellants at 2-3 (citations omitted).

BAC and the Subsidiaries now appeal.

## Discussion and Decision[2]

### I. Standard of Review

Indiana's Unemployment Compensation Act provides, "any decision of the [LALJ] shall be conclusive and binding as to all questions of fact," and appeals may be made to this court "solely for errors of law." Ind. Code § 22-4-32-9(a). Thus, the LALJ's legal conclusions are not entitled to the same deference as its factual findings. Franklin Elec. Co., Inc. v. Unemployment Ins. Appeals of Ind. Dep't of Workforce Dev., 953 N.E.2d 1066, 1069 (Ind. 2011). We apply a de novo standard of review to questions of law and will not defer to the LALJ's legal conclusions. Highland Town Sch. Corp. v. Review Bd. of Ind. Dep't of Workforce Dev., 892 N.E.2d 652, 654 (Ind. Ct. App. 2008). The issue raised by BAC and the Subsidiaries is a pure question of law, and we therefore apply de novo review.

---

[2] We held oral argument in the Court of Appeals Courtroom in Indianapolis on October 11, 2012. We

## II. BAC As Successor Employer to the Subsidiaries

Indiana Code section 22-4-10-6(a) provides:

> When: . . . (2) an employer acquires the organization, trade, or business, or substantially all the assets of another employer; or (3) an employer transfers all or a portion of the employer's trade or business (including the employer's workforce) to another employer as described in IC 22-4-11.5-7; the successor employer shall, in accordance with the rules prescribed by the department, assume the position of the predecessor with respect to all the resources and liabilities of the predecessor's experience account.

The sole issue raised by the BAC and the Subsidiaries is whether the Department erred in determining BAC became the successor employer of the Subsidiaries. BAC contends the Department erred because it did not acquire "the organization, trade, or business, or substantially all the assets" of each of the Subsidiaries. The Department, on the other hand, argues Indiana Code section 22-4-11.5-7 applies, and that pursuant to that section, the Department correctly concluded BAC is the successor employer of the Subsidiaries and their experience accounts should have been recalculated and combined. That section provides:

> (a) This section applies to a transfer of a trade or business that meets the following requirements:
> > (1) An employer transfers all or a portion of the employer's trade or business to another employer.
> > (2) At the time of the transfer, the two (2) employers have substantially common ownership, management, or control.
> (b) The successor employer shall assume the experience account balance of the predecessor employer for the resources and liabilities of the predecessor employer's experience account that are attributable to the transfer.
> (c) The contribution rates of both employers shall be recalculated, and the recalculated rate made effective on the effective date of the transfer described in subsection (a).

Ind. Code § 22-4-11.5-7. Thus, we will consider each section in turn.

---

thank counsel for their capable advocacy.

We give no deference to the LALJ's legal conclusions. <u>Highland</u>, 892 N.E.2d at 654.

Nevertheless, the LALJ concluded:

> There is no dispute that the employer (BAC) purchased all of ACS's assets. The [LALJ] concludes that the acquisition also included acquisition of the 26 subsidiaries. The subsidiaries had several common elements. Management for the subsidiaries was fluid with several of the managers having decision-making power over several subsidiaries. After the merger, the fate of each subsidiary was dependent on decision from Xerox. The essence of a subsidiary is that it is controlled by a larger entity, and its reason to be is to add some value to a larger entity. According to Xerox's own release, the purpose of the transaction in this case was to enlarge Xerox's share of the market for information technologies, business process and document management, including data processing, HR benefits management, finance support, and customer relationship management for commercial and government organizations worldwide. This could not be accomplished if the subsidiaries were not part of the transaction.

App. to Br. of Appellants at 5 (citation omitted).

BAC contends it did not acquire the "organization, trade, or business, or substantially all of the assets" of any of the Subsidiaries, and thus, it is not the "successor employer" of the Subsidiaries and the LALJ erred by combining BAC's and the Subsidiaries' experience accounts. Rather, it argues it acquired "the organization, trade, or business, or substantially all the assets" of <u>only ACS</u>, not any of the Subsidiaries.

The Department acknowledges that the relationship between the Subsidiaries and its parent company did not change when the parent company changed from ACS to BAC. Rather, the Department contends ACS and the Subsidiaries having separate experience accounts prior to the merger was in error pursuant to the Indiana Code, and the Department corrected the error when BAC notified the Department of its merger with ACS.

7

The issue of whether the acquisition of an equity interest in a subsidiary company includes the acquisition of the organization, trade, or business, or substantially all of the assets of the subsidiary is an issue that has not been decided by this court or our supreme court. In Franklin Electric, our supreme court addressed a similar issue. 953 N.E.2d 1066. There, Franklin Electric formed two new subsidiary companies and created new unemployment experience accounts for each subsidiary, which came with low introductory contribution rates. Thereafter, the Department concluded the subsidiaries were not new employers and combined the experience accounts of Franklin Electric and the two subsidiaries. Our supreme court affirmed, concluding the subsidiaries were not "employers" pursuant to Indiana Code section 22-4-7-2(b) because they did not "acquire[] a distinct and segregable portion of the organization, trade, or business" of another employer. Id. at 1069 (quoting Ind. Code § 22-4-7-2(b) (2007)). Because the subsidiaries were not employers, they did not qualify for separate experience accounts.

The supreme court concluded the subsidiaries were not employers because the employees of the subsidiaries were still paid by Franklin Electric, employee benefits for the subsidiaries were paid by Franklin Electric, Franklin Electric provided workers' compensation coverage for the subsidiaries, and on one occasion Franklin Electric transferred assets to one of the subsidiaries and subsequently sold the same assets to a third party without first transferring the assets back to Franklin Electric. Our supreme court stated that, "[n]one of these facts alone would be dispositive, but taken together they adequately support the

8

LALJ's conclusion that [the subsidiaries] are not distinct and segregable from Franklin Electric." Id. at 1070. The court also clarified:

> Today's holding is a narrow one. It deals only with the language "distinct and segregable" as used in the unemployment statutes and only concerns determining the proper merit rate for unemployment contribution. The instant ruling neither calls into question the validity of the wholly owned subsidiary arrangement, nor holds that the creation of a wholly owned subsidiary can never result in the new entity becoming a separate employer.

Id. at 1071.

The issue before us is not whether BAC and the Subsidiaries are "distinct and segregable," but rather, whether BAC acquired the organization, trade, or business, or substantially all of the assets of the Subsidiaries, or whether the Subsidiaries transferred all or a portion of their trade or business to BAC. Thus, the narrow holding in Franklin Electric does not govern our interpretation of Indiana Code section 22-4-10-6(a).

While the court's holding in Franklin Electric was narrowly construed, it provides principles helpful to our analysis. The court noted, "[b]ecause the same employees are doing the same work for the same people, we hold that the business acquired by [the subsidiaries] was not distinct and segregable from Franklin Electric." Id. While the parent company went to the trouble of creating legally separate subsidiary companies, it did not turn over its role as employer of the employees who were supposed to be within the purview of those subsidiaries. Additionally, when Franklin Electric sold assets of a subsidiary to a third party without transferring the assets to itself first, Franklin Electric failed to respect the distinction between itself and the legally separate subsidiary company. While the law of corporations allows a parent company to benefit by creating legally separate subsidiary companies which

9

the parent company owns, the legal separation between the companies must be respected by the parent company. See, eg., Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1234 (Ind. 1994) ("Just as equity permits the piercing of a corporate veil to reach the assets of an individual, so too equity permits the piercing of the subsidiary's corporate veil to reach the assets of the parent to protect innocent third parties from fraud or injustice.").

The evidence reveals BAC merged with ACS, and in doing so it acquired equity interests in the Subsidiaries, which added value to BAC and, consequently, to Xerox. The Department asserts we should conclude BAC is the "successor employer" to the Subsidiaries pursuant to Indiana Code section 22-4-10-6 because of BAC's ownership of the Subsidiaries, combined with the fact that they all had a single employee benefit plan. BAC argues it did not become the successor employer to the Subsidiaries because it merely acquired equity interests in the Subsidiaries rather than acquiring the organization, trade, or business, or substantially all of the assets of any of the Subsidiaries.

We conclude BAC did not acquire the organization, trade, or business, or substantially all of the assets of any of the Subsidiaries, nor did the Subsidiaries transfer all or a portion of their trade or business to BAC. As our supreme court insinuated in Franklin Electric, subsidiary companies are separate legal entities and, as such, can be separate employers from their parent companies. 953 N.E.2d at 1071; see also McQuade v. Draw Tite, Inc., 659 N.E.2d 1016, 1020 (Ind. 1995) ("Under Indiana law, a corporation is a legal entity separate from its shareholders, and corporate shareholders are liable for corporate acts to the extent of their investment but are not personally liable for acts attributable to the corporation. Thus,

10

we recognize a subsidiary and its parent corporation-shareholder as separate legal entities.") (citations omitted). Because subsidiary companies are separate legal entities from their parent companies, acquiring equity ownership in a subsidiary, without more, does not constitute acquiring the organization, trade, or business, or substantially all the assets, of such a subsidiary.

Prior to the merger, the Subsidiaries were separate legal entities and acted separately for most purposes. The Subsidiaries had their own assets and liabilities; they performed their own financial and payroll reporting; they performed their own W-2 reporting; they had their own state and federal tax identification numbers; and they depended upon their own corporate governance. During and/or after the merger, BAC did not change the relationship between it and the Subsidiaries in a way that would have blurred the legal distinction between them. It did not merge the Subsidiaries' legal entities into its own, nor did it take over the business operations of any of the Subsidiaries. It did not buy the assets of the Subsidiaries, but only the assets of ACS. It did not alter how the Subsidiaries operate or take employer-related responsibilities away from the Subsidiaries. Rather, BAC merely acquired equity ownership in the Subsidiaries.

This is unlike in Franklin Electric, where the parent company never truly turned over the reigns as the employer after creating newly-established subsidiaries. Here, the Subsidiaries held the reigns as the employers of their respective employees prior to the merger and never turned over that position to BAC during or after the merger. Thus, from a policy standpoint, BAC is not abusing the parameters of the parent-subsidiary relationship for

11

its own benefit, and the Subsidiaries should be permitted to maintain their own unemployment experience accounts. As BAC points out, public policy is served by allowing the business entity that administers certain employees to face the unemployment tax consequence of the frequency with which its employees become unemployed, whether that consequence is positive or negative. This places the administrative burden of letting employees go directly upon the employer acting in control of the employees.

Additionally, we conclude our analysis does not change when considering whether the requirements of Indiana Code section 22-4-11.5-7 were met. To apply here, that section requires that the Subsidiaries transferred "all or a portion of [their] trade or business to [BAC]," and that at the time of such transfer, the Subsidiaries and BAC "have substantially common ownership, management, or control." Above we concluded that BAC did not acquire the organization, trade or business of the Subsidiaries. The same reasoning applies here to whether there was a transfer of the trade or business of any of the Subsidiaries to BAC. BAC merely acquired equity interests in the Subsidiaries. It did not cause the Subsidiaries to transfer any part of their businesses or employees. The Subsidiaries remained separate legal entities. Thus, the contribution rates of BAC and the Subsidiaries should not be recalculated as Indiana Code section 22-4-11.5-7(c) provides due to BAC taking equity interests in the Subsidiaries.[3]

_____

[3] BAC's contribution rate was, and should have been, recalculated due to its merger with ACS. This is distinct from BAC's rate being recalculated due to the Subsidiaries transferring any portion of their trades or businesses to BAC.

Further, because we conclude the Department erred by concluding BAC is the successor employer to the Subsidiaries, we also conclude the Department erred by assessing retroactive contributions, interest, and penalties against BAC.

## Conclusion

BAC did not acquire the organization, trade, or business, or substantially all the assets of the Subsidiaries, nor did the Subsidiaries transfer all or a portion of their trade or business to BAC. Thus, BAC is not a successor employer to the Subsidiaries pursuant to either Indiana Code section 22-4-10-6(a) or Indiana Code section 22-4-11.5-7, and the Subsidiaries' unemployment experience accounts should not have been combined with BAC's account, nor should the contribution rates of BAC and the Subsidiaries have been recalculated, other than the recalculation of BAC's rate due to its merger with ACS. We therefore reverse and remand to the Department to adjust their respective experience accounts accordingly, and to refund any over-payment by BAC and/or the Subsidiaries.

Reversed and remanded.

BAKER, J., and BRADFORD, J., concur.