

**FILED**

Oct 12 2017, 9:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mary Lee Schiff
Wm. Michael Schiff
Ziemer, Stayman, Weitzel & Shoulders, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Diversified Technical Services, Inc., | October 12, 2017 |
| *Appellant,* | Court of Appeals Case No. 93A02-1702-EX-422 |
| v. | Appeal from the Indiana Department of Workforce Development |
| Indiana Department of Workforce Development, | The Honorable Aija Funderburk, Liability Administrative Law Judge |
| *Appellee.* | Cause No. 103781 |

**Bailey, Judge.**

# Case Summary

Diversified Technical Services, Inc. ("DTS") appeals the decision of a Liability Administrative Law Judge ("ALJ") concluding that DTS was a successor employer that had assumed unemployment tax liabilities, upon acquiring substantially all the assets of Diverse Technical Services ("Diverse"), an entity owned by Pokey, Inc. DTS raises a single issue, whether the ALJ erred as a matter of law in concluding that DTS is a successor employer of Diverse or Pokey, Inc.,[1] under Indiana Code Section 22-4-10-6(a). We reverse.

# Facts and Procedural History

Pokey, Inc., an entity owned by Richard and Pamela Martin, registered with the Indiana Department of Workforce Development ("the Department") and was assigned an Unemployment Insurance Benefit Fund ("Fund") account number of 718021. Pokey, Inc. owned Diverse, a staffing agency that placed retired ALCOA employees in temporary post-retirement positions with ALCOA in Indiana. In November of 2014, Diverse shut down its operations. The Diverse labor force of approximately forty-five persons was, in large part, transferred to Manpower.

---

[1] The appealed order states that "DTS acquired the organization, trade, or business, or substantially all of the assets of Diverse's business and became an employer and a successor employer." (App. Vol. II, pg. 8.) However, the tax liability at issue may have been that of Pokey, Inc., Diverse's parent corporation, as the Merit Rate Delinquency Notice lists account numbers for each.

[3] Daniel Harpenau ("Harpenau") worked in the construction industry as an electrician, project manager, and general manager. He incorporated DTS in July of 2015. Having spent significant amounts of time at the ALCOA plant in Newburgh, Indiana, he was aware of the closing of Diverse. He approached the Martins with an offer to pay for the name, goodwill, and accounts receivable of Diverse as an "opening in the door" at ALCOA. (Tr. Vol. II, pg. 83). At that time, Diverse had two dormant staffing accounts, one with ALCOA and one with Toyota Motor Manufacturing Indiana, Inc. Harpenau initially was advised that there was a "zero balance" due as receivables, but it was subsequently discovered that a sum was due on one account. (Tr. at 82.)

[4] On September 9, 2015, DTS and Diverse executed an Asset Purchase and Sale Agreement ("the Agreement") whereby DTS purchased from Diverse, for the sum of $15,000.00:

> A. Name "Diverse Technical Services";
>
> B. Accounts receivable due from Alcoa Warrick accruing after June 26, 2015;
>
> C. Any accounts receivable due from Toyota Motor Manufacturing Indiana, Inc. to the extent work is performed after the Closing Date;
>
> D. All goodwill associated with the Business.

(Exhibits, pg. 12.) Apart from the Agreement, DTS acquired W-2s and W-3s pertaining to former employees of Diverse. The Agreement stated that DTS was not acquiring any liability of Diverse.

[5] DTS, which had three employees including its owner/incorporator, offered safety training and consulting services, project management services, project funding management, electrical design services and electrical safety services to ALCOA and Toyota.

[6] In October of 2015, an accountant employed by DTS, Karen Moseley ("Moseley"), contacted the Department regarding completion of State Form 2837, SUTA Account Number Application & Disclosure Statement. The "call came in" to Department staff to pose an inquiry summarized as "if you buy the name of a company, does that count as an acquisition?" (Tr. Vol. II, pg. 38.) After consultation, Moseley answered Question 5(a) on the SUTA form to reflect that DTS had acquired 100% of a "disposer" Indiana corporation, specified as "Pokey, Inc." having SUTA account number 412947. Harpenau reviewed and signed the form, and it was submitted to the Department.

[7] After receipt of the SUTA form, the Department concluded that DTS had acquired the complete business of Diverse (having SUTA account 412947).[2] On November 6, 2015, the Department issued a Notice of Complete

---

[2] The SUTA form in the record now includes a hand-written notation in the right-hand corner of 718021, the experience account number assigned to Pokey, Inc.

Disposition of Business to New Acquirer. The Notice identified the "Acquirer" as Diversified Technical Services with an account number of 718021 and identified the "Disposer" as Diverse Technical Services, Inc. with an account number of 412947. In part, the Notice stated: Our records show you acquired the complete business on or about 06/26/2015 from the named disposer." (Exhibits, pg. 69.)

[8] On November 9, 2015, the Department issued a Merit Rate Delinquency Notice to DTS for January 2011 forward. The notice alternately referenced SUTA account numbers 718021 and 412947. The notice demanded the sum of $170,776.25, which was identified as "Delinquent Quarters for Account Number 718021 – 2/2015" and liabilities for "predecessor with account number 412947." (Exhibits, pg. 70.) The notice demanded payment within ten days on Account Number 412947.

[9] On November 20, 2015, a representative of DTS's accounting firm issued a letter to the Department, stating that DTS did not acquire the business, stock, or substantially all assets of Pokey, Inc., and claiming that DTS and Pokey, Inc. were completely unrelated taxpayers. Subsequently, DTS filed a tax protest form with the Department to oppose the determination of successorship.

[10] On December 7, 2016, and January 18, 2017, the ALJ conducted a hearing to address whether DTS had timely protested the successorship determination[3]

---

[3] The ALJ ruled that the protest was permissible, and this is not challenged on appeal.

and whether DTS was a "successor employer assuming the liabilities and experience balance of the predecessor [pursuant to] IC 22-4-10-6(a)." (App. Vol. II, pg. 4.)

The Department's representative testified that the Department had relied upon the SUTA form submitted by DTS's accountant, and the Department had no independent knowledge of the extent of the assets formerly held by Diverse.[4] The Department had attempted to obtain information on the holdings of Diverse from the former owners, but they were unresponsive.

Moseley testified that she had "filled in 100%" on the form, attached a copy of the Agreement, and "relied on the Department." (Tr. Vol. II, pg. 66.) She denied having any knowledge of the percentage of total assets purchased and testified that her intent was to apply "as a new business for this SUTA account number" reported on the form. (Tr. Vol. II, pg. 66-67.) She described the form as a "request for an unemployment insurance account." (Tr. Vol. II, pg. 68.) Harpenau testified that he "didn't know what Diverse had to sell." (Tr. Vol. II, pg. 100.) He estimated that DTS had acquired 1 or 2% of Diverse's assets.

On February 1, 2017, the ALJ issued an order providing in relevant part:

> DTS acquired the organization, trade, or business, or substantially all of the assets of Diverse's business and became an employer and a successor employer. See Ind. Code § 22-4-7-2(a);

---

[4] Despite the SUTA form's use of an account number for Pokey, Inc., no focus was placed upon Pokey, Inc.'s assets apart from Diverse.

Ind. Code 22-4-10-6(a).  Based on the foregoing conclusions, the Liability Administrative Law Judge concludes that the Department correctly determined that DTS made a complete acquisition and assumed all the resources and liabilities of the predecessor's experience account as a successor employer. DTS's protest is DENIED.  The Department's determination is AFFIRMED.

(App. Vol. II, pg. 8.)  This appeal ensued.

# Discussion and Decision

[14] Both DTS and the Department acknowledge a dearth of evidence as to the disposer's assets, due to the disposer's non-cooperation.  DTS observes that the ALJ initially advised the parties that the Department bore the burden of proof to establish successorship, but then concluded that DTS had failed to provide adequate proof of non-acquisition of assets.  The Department responds that it relied upon DTS's own representation that it acquired 100% of a predecessor corporation and, despite DTS "challenging its own representation," there is an absence of evidence to show that DTS did not acquire all assets "that existed at the time of transfer."  Appellee's Brief at 9.  Thus, the parties disagree as to which bore the burden of proof on scope of acquisition.  Additionally, DTS argues that determining a proportional share of assets is not summarily dispositive of successorship, as the statutory focus is upon continuity of employment and DTS took none of Diverse's employees.

[15] Our applicable standard of review was set forth in *Franklin Elec. v. Unemployment Ins. Appeals*, 953 N.E.2d 1066, 1069 (Ind. 2011):

Under Indiana Code § 22-4-32-9 (2007), "Any decision of the liability administrative law judge shall be conclusive and binding as to all questions of fact." The decision of the LALJ may be appealed "solely for errors of law under the same terms and conditions as govern appeals in ordinary civil court." *Id.* The LALJ's legal conclusions are not entitled to the same deference. *Ind. Dep't of Envtl. Mgmt. v. West*, 838 N.E.2d 408 (Ind. 2005).

"When the facts are undisputed, and the question is whether those facts lead to a certain conclusion, the case presents a question of law and the courts need not defer to agency decision making." *Ashlin Transp. Servs. v. Ind. Unemployment Ins. Bd.*, 637 N.E.2d 162, 165 (Ind. Ct. App. 1994). Here, we are asked to apply a statutory provision to sparse, undisputed facts.

[16] Unemployment insurance in Indiana is financed by a tax on Indiana employers. The employer contributions are charged proportionally against an employer's experience account. I.C. § 22-4-11-1(a). The greater the number of unemployment claims, the more that employer must contribute to the unemployment fund. *Franklin Elec.*, 953 N.E.2d at 1069. Indiana Code Section 22-4-10-4 requires that the Department maintain within the fund a separate experience account for an individual employer. Each year, the Department determines the contribution rate applicable to each employer, and the contribution is then credited to the experience account. *UTLX Mfg., Inc. v. Unemployment Ins. Appeals*, 906 N.E.2d 889, 892 (Ind. Ct. App. 2009).

[17] Pursuant to Indiana Code Section 22-4-7-2(a), an "employer" includes "any employing unit … which acquires substantially all the assets within this state of

such an employer used in or in connection with the operation of such trade or business, if the acquisition of substantially all such assets of such trade or business results in or is used in the operation or continuance of an organization, trade, or business."

[18] Indiana Code Section 22-4-10-6(a) governs whether an entity is a "successor employer" that "shall assume the position of the predecessor with respect to all the resources and liabilities of the predecessor's experience account." A successor employer includes one that becomes an employer under Indiana Code Section 22-4-7-2(a), and an employer that "acquires the organization, trade, or business, or substantially all the assets of another employer."

[19] The word "substantially" does not invoke a "definite, fixed amount of percentage but is an elastic term which must be construed according to the facts of the particular case." *Astral Indus., Inc. v. Ind. Emp. Sec. Bd.*, 419 N.E.2d 192, 197 (Ind. Ct. App. 1981). A "prime question" in determining whether substantially all assets were acquired is whether the acquisition resulted in a substantial continuation of the same or like business. *Id.*[5]

[20] In *Indianapolis Concrete v. Unemployment Ins.*, 900 N.E.2d 48 (Ind. Ct. App. 2009), a panel of this Court observed that several factors have been considered in determining whether one employer has acquired substantially all the assets of

---

[5] The *Astral* Court expressed the view that Accounts Receivable are not "assets" for successorship purposes, as they are not usable by both the predecessor and successor in continuing a business. *Id.* at 198.

another. These have traditionally included acquisition of: (1) manufacturing equipment and machinery; (2) office equipment; (3) corporate name; (4) inventories; (5) covenants not to compete; (6) possession of premises; (7) good will; (8) work in progress; (9) patent rights; (10) licenses; (11) trademarks; (12) trade names; (13) technical data; (14) lists of customers; (15) sales correspondence; (16) books of accounts; and (17) employees transferred. *Id.* at 51.

In *Indianapolis Concrete*, the Court considered the following facts of record. Indianapolis Concrete was an entity formed one week after the dissolution of Indy Concrete. Indianapolis Concrete initially hired five of Indy Concrete's former employees, and, after six weeks, had acquired a total of eighteen. Indianapolis Concrete received Indy Concrete's telephone number, two trucks, a trailer, several water pumps, trowel machines, and other equipment. Indianapolis Concrete acquired and leased other equipment and ten vehicles. Indianapolis Concrete did not take Indy Concrete's computers or office equipment or conduct business from Indy concrete's office. Indianapolis Concrete did not use Indy Concrete's goodwill but did acquire two of Indy Concrete's clients. *See id.* at 49. The Court concluded that "Indianapolis Concrete did not acquire substantially all of the assets of Indy Concrete. Rather, it acquired assets from which it built a new business."

By contrast, this Court affirmed the decision of the ALJ in concluding that D & D NAPA, Inc. was a partial successor to Chaffins Enterprises, Inc. for purpose of calculating its unemployment benefit contributions. *D & D NAPA, Inc. v.*

*Unemployment Appeals of Ind.*, 44 N.E.3d 67 (Ind. Ct. App. 2015). There, the acquirer testified that "D & D purchased Chaffins's assets and hired the employees 'to operate the same business in the same location under the same DBA that the former entity had used.'" *Id.* at 77. She also testified that the business had operated "seamlessly" between D & D and Chaffins and the store was a NAPA store before and after the sale, never ceasing to be a NAPA location. *Id.*

[23] Here, at the hearing before the ALJ, DTS contended that it acquired no tangible property from Diverse, DTS provided different services from those offered by Diverse, and DTS had not acquired substantially all Diverse's assets. Testimony from the Department and DTS witnesses distilled to the following: Diverse ceased doing business as a staffing agency and transferred the majority of its forty-five employees to Manpower; DTS reported an acquisition of an Indiana entity and provided an unemployment account number for Pokey, Inc.; the reporting accountant made a written representation that was not founded upon her personal knowledge or information provided to her; DTS's owner, despite having signed the form, disputed its accuracy; and the extent of Diverse assets prior to or at the time of the execution of the Agreement was not known by either the Department or DTS.

[24] The ALJ made factual findings, including: DTS has three employees; DTS did not acquire assets like equipment, inventory, machinery, vehicles, leases, or intellectual property; DTS did not acquire Diverse's employees; Harpenau did not know what assets Diverse had available to sell; and DTS submitted a SUTA

form to report "100% of a business called Pokey, Inc., with SUTA# 412947 transferred to DTS on June 26, 2015." (App. Vol. II, pg. 5.) In the findings of fact section, the ALJ acknowledged Harpenau's testimony regarding the estimated percentage of assets acquired, but did not adopt the testimony or make a credibility determination. However, the ALJ appeared to credit Harpenau's testimony in part, in that he provided the sole testimony that DTS did not acquire any physical assets from Diverse and the ALJ enumerated excluded assets.

[25] Nonetheless, in the "decision" section of the order, the ALJ found a "complete acquisition" had been achieved or, more particularly, that DTS had not established the absence of a complete acquisition:

> DTS argues that it did not acquire all of Diverse's assets or business and, therefore, did not make a complete acquisition. The [ALJ] disagrees. More specifically, DTS acquired Diverse's name, two main client accounts and all of the goodwill associated with Diverse's business. DTS acquired those items in order to preserve Diverse's business reputation, conduct business with Diverse's clients, and prevent any business competition. Based on those facts, the [ALJ] concludes that DTS acquired the organization, trade or business of an employer in this state and became an employer under Indiana Code § 22-4-7-2(a).

> In addition, while DTS did not acquire certain assets, like equipment or employees, DTS did not know what assets, if any, that Diverse had available to sell. Thus, DTS failed to establish that it did not acquire substantially all of the assets of Diverse's business.

(App. Vol. II, pg. 8.)

[26] The foregoing language indicates that the ALJ placed squarely upon DTS the burden of proving it was not a successor employer because it did not acquire substantially all Diverse's assets. However, the relevant statutory scheme does not require that DTS prove a negative. Rather, an employer is to be treated by the Department as a successive employer, for purposes of assumption of an experience account, when the employer has acquired the "organization, trade, or business, or substantially all the assets of another employer." I.C. § 22-4-10-6. "The Department is responsible for determining the successorship status of an acquiring employer when either a total or partial acquisition occurs between employers." *Indianapolis Concrete*, 900 N.E.2d at 50. It follows that the Department must have an adequate basis for making this determination. Here, the evidence fell short.

[27] "[S]uccessor employer status occurs under Section 6(a) when the entity or substantially all of its assets are acquired by another employer." *Ashlin*, 637 N.E.2d at 169. The Department determination of successorship did not rest on grounds that DTS simply took over and continued Diverse's trade or business. Indeed, the ALJ stated that DTS did not provide all the same services as Diverse and such was not required. The Department's position was that of substantial acquisition, based upon the SUTA form identifying Pokey, Inc. as a disposer corporation and including Diverse's account number. Because the ALJ concluded that DTS was a successor employer without addressing the credibility of the testimony of error, it is unclear whether the ALJ treated the

SUTA form as conclusive under the law, something not to be amended or contradicted. Ultimately, what is clear is that, after the presentation of evidence, it remained unknown what assets either Pokey, Inc. or Diverse held prior to DTS's acquisition of some assets. Thus, it is impossible to determine on the limited record whether DTS acquired substantially all those assets.

[28] But regardless of percentile apportionment of assets, clearly the intangibles purchased by DTS were insufficient to support continuation of the business conducted by Diverse. Crucially, DTS did not acquire Diverse employees, the essence of an ongoing staffing business. *See Ashlin*, 637 N.E.2d at 167 ("Employees add value just as do physical assets and customer good will.") A most generous consideration of the Department's evidence would reveal no more than DTS "acquired assets from which it built a new business." *Indianapolis Concrete*, 900 N.E.2d at 52. In such circumstances, an employer is not a successor employer. *See id.*

# Conclusion

[29] The ALJ's conclusion that DTS is the successor employer of Diverse was incorrect as a matter of law.

[30] Reversed.

Baker, J., and Altice, J., concur.